IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUZ M. GONZÁLEZ NIEVES,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPALITY OF AGUADILLA; CARLOS MENDEZ MARTINEZ, personally and as Mayor of Aguadilla; NANETTE GUEVARA, personally; INSURANCE COMPANY A, B and C; JOHN AND JANE DOE,<br><br>Defendants. | CIVIL NO.:<br><br>DISABILITY DISCRIMINATION; RETALIATION; DAMAGES<br><br>TRIAL BY JURY |

**COMPLAINT**

**TO THE HONORABLE COURT:**

**COMES NOW** plaintiff, Luz M. González Nieves (hereafter referred to as "González-Nieves"), through the undersigned attorneys, and very respectfully states and prays as follows:

**I.   NATURE OF THE ACTION AND JURISDICTION**

1. This action is brought pursuant to the Americans with Disabilities Act and Americans with Disabilities Act Amendments Act (hereinafter "ADA" and "ADAA", respectively), Rehabilitation Act of 1973, as amended, 29 U.S.C. § 701, et seq. ("RA"); Puerto Rico's Law No. 44 of July 2, 1999, as amended, and Puerto Rico's Law No. 115 of December 20, 1991, as amended, seeking compensatory, double and punitive damages, back pay, equitable and injunctive relief to seek

1

redress for defendants' discrimination on the basis of disability and retaliation against González-Nieves.

2. This Honorable Court has jurisdiction to entertain this action pursuant to the Equal Opportunities for Individuals with Disabilities Act, 42 U.S.C. §§ 12101 et seq., and under ADA, 28 U.S.C. §§ 1331 and 1343(a)(4). Its supplemental jurisdiction is also invoked pursuant to 28 U.S.C. 1367(a) to hear the Commonwealth law claims because these are so related to the other claims as to which this court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and (2), because the defendants reside in Puerto Rico and all the discriminatory employment practices alleged herein were committed within the judicial district comprising the Commonwealth of Puerto Rico.

4. On September 6, 2011, Gonzalez-Nieves filed a timely charge of employment discrimination on the basis of disability with the Equal Employment Opportunity Commission (hereinafter "EEOC"). On November 15, 2012, a Notice of Right to Sue was issued by the United States Department of Justice. *See*, Exhibit 1.

5. The instant Complaint is being filed within 90 days of González-Nieves' receipt of the Notice of Dismissal and Right to Sue.

## II.   PARTIES

6. Plaintiff is a citizen of the United States and a resident of Aguadilla, Puerto Rico.

7. González-Nieves commenced working for the Municipality of Aguadilla (hereinafter "Aguadilla" or the "Municipality") on August 2, 1999.

8. González-Nieves currently occupies the position of Executive Officer I ("Oficial Ejecutivo I") and she is physically assigned to work at the Luis A. "Canena" Márquez Municipal Stadium at the Municipal Office for the Management of Emergencies (hereinafter "MOME").

9. González-Nieves is an employee under the provisions of ADAA, the Rehabilitation Act and is within the protected class under those statutes and their Puerto Rico counterparts.

10. The Municipality of Aguadilla (hereinafter "the Municipality") is a political entity within the Commonwealth of Puerto Rico with the capacity to sue and be sued.

11. At all times relevant herein, the Municipality has been González-Nieves' employer under the federal and local statutes under which she claims relief.

12. Carlos Méndez Martínez (hereinafter "Méndez" or the "Mayor") was, at all times relevant herein, Mayor of the Municipality and González-Nieves' ultimate supervisor.

13. Nanette Guevara (hereinafter "Guevara") was, at all times relevant herein, the Municipality's Human Resources Director.

14. The Municipality, Méndez and Guevara are "employers" under Puerto Rico's Laws No. 44 and Law No. 115.

15. Insurance Company A, B and C is an insurance company whose identity is unknown at this time which issued an insurance policy that insures the defendants from the claims alleged herein. The Puerto Rico statutes provide for a direct cause of action against the insurance company.  Once the identity of this insurance company is revealed, Plaintiff will move to amend and substitute the actual name

with the one presented.

16. John and Jane Doe are other parties, whose identity is unknown at this time, who acting in common with the defendants, are jointly liable for the damages caused upon the Plaintiff. Once their identity is revealed through discovery, Plaintiff will move to substitute the names of the parties.

### III.  THE FACTS

17. González-Nieves repeats and realleges each and every preceding allegation as if fully set forth herein.

18. González-Nieves had been diagnosed with Asthma and Diabetes. Both conditions were known by her employers.

19. These conditions are listed as covered disabilities under the ADAAA and the Rehabilitation Act.

20. González-Nieves performed her duties as Executive Officer ("Oficial Ejecutivo") in the Department of Federal Programs of the Municipality until August 13, 2010 and, effective, August 16, 2010, she was transferred to MOME.

21. González-Nieves was to report to her supervisor, Frank Hernández (hereafter referred to as "Hernández"), at 8:00 a.m. on August 16, 2010.

22. MOME's headquarters are located at the Luis A. "Canena" Márquez Baseball Stadium in Aguadilla.

23. Among those assigned to the baseball stadium is personnel from the Municipal Public Works and from the Sports and Recreation Departments. Some of these employees, among other things, are in charge of the Stadium's maintenance.

24. The maintenance of the Stadium involves the use of diesel, detergents,

insecticides (i.e., "Malathion") and the operation of heavy machinery to maintain the grounds.

25. The use of these materials is harmful to González-Nieves because of her asthmatic condition.

26. In addition to these chemicals, the area of the Stadium where González-Nieves was assigned was full of pigeons, rats and bats, as well as employees who constantly smoke during working hours.

27. At all relevant times, there was pigeon and bat excrement in the areas where González-Nieves worked or near those areas, which is dangerous to humans if inhaled.

28. Due to González-Nieves' asthmatic condition, MOME's facilities to where she was assigned were not safe for her and placed her health at risk.

29. On August 28, 2010, just twelve (12) days after her transfer, Dr. Rosa Román examined González-Nieves and concluded that MOME's facilities posed a risk of harm to González-Nieves.  Doctor Román suggested, as a reasonable accommodation, that she be transferred to an area free of bird droppings, chemical fumes, dampness ("humedad") and with temperature control.

30. Doctor Román also warned that failure to assign González-Nieves to a more clean area could have "catastrophic consequences" to her health.

31. On September 1, 2010, González-Nieves requested the Municipality through her supervisor Hernández, to provide her reasonable accommodation.  This request included a petition for reasonable accommodation to the Municipality, in the form provided by the Municipality for that purpose under the Municipality's

regulations, and Doctor Román's medical certificate supporting her requests and photographs of the conditions that affected her health.

32. On September 1, 2010, Plaintiff requested as reasonable accommodation that she be transferred to an area free of bird droppings, chemical fumes, dampness ("humedad") and with temperature control.

33. The September 1, 2010 request for reasonable accommodation was received by the Aguadilla Human Resources Department on September 7, 2010.

34. At the time of the request and subsequent times thereafter, there had been positions available at the Municipality where Plaintiff could have been reasonably accommodated through relocation or transfer.

35. Gonzalez-Nieves made subsequent requests for reasonable accommodation, all of which were unanswered by the Municipality or its officials. Notwithstanding the repeated efforts of the Plaintiff, the Municipality refused to engage with Plaintiff in an interactive process and never discussed nor suggested alternatives to accommodate her known disability, as mandated by law.

36. This refusal to engage in the interactive process to discuss a petition for reasonable accommodation, constitutes a blatant and callous violation of the ADAA, the Rehabilitation Act and the Municipality's own Regulations for handling requests for reasonable accommodation.

37. More than two (2) years later, the Municipality has yet to engage in the required interactive process required by González-Nieves to seek a reasonable accommodation.

38. The Municipality has taken every opportunity to avoid having to engage González

in an effort to reasonably accommodate her.

39. Among these, the Municipality has unilaterally, in violation of the H.I.P.P.A., discussed González' medical condition without any authorization from her with the "Oficina del Procurador del Impedido" (Office of the Ombudsman for the Disabled or "OPI") officials in Puerto Rico.  González-Nieves learned for the first time of this matter on August 9, 2011, when Guevara informed González-Nieves of its "consultation" with the cited Ombudsman.

40. On September 7, 2010, González-Nieves filed an administrative complaint before PROSHA (The Puerto Rico Office for the Safety and Health Act) denouncing the health hazards she was exposed to at MOME.  Together with her petition, she submitted photographs supporting her contentions.

41. In 2010, PROSHA officials visited the Municipality when González-Nieves was absent from work, to investigate the allegations of the Complaint.  PROSHA and The Municipality entered into a settlement agreement on October 28, 2010.

42. The Municipality agreed to correct the hazards found. Plaintiff learned about this settlement on January 18, 2011, through a letter issued by Human Resources Director, co-defendant Nanette Guevara (hereafter referred to as "Guevara") to González-Nieves on January 18, 2011. Notwithstanding, the hazardous conditions remained.

43. In Guevara's letter, she asserted that González-Nieves' request for reasonable accommodation did not provide the basis for the petition.

44. González-Nieves' request for reasonable accommodation of September 1, 2010 was made in the form provided by the Municipality to González for those

purposes, as provided in its Regulations for Reasonable Accommodations.

45. In it, González-Nieves described the condition that affected her health at work:

> i. The conditions of the physical facilities of the work area are unfit for persons with pulmonary problems. The rampant use of chemicals, animal excrement, rats, pigeons and bats affect and/or aggravate my asthma condition (translation ours).

46. González-Nieves' efforts to move the Municipality to reasonably accommodate her were met not only with unlawful obstacles but also with illegal retaliation for having exercised her rights and for having insisted that they be afforded.

47. On September 6, 2011, Plaintiff filed a claim before the EEOC for ADA based discrimination.

48. On January 11, 2012 the Mayor pressed charges against González-Nieves for allegedly having engaged in false and/or fraudulent conduct in detriment to the interests of The Municipality.

49. According to the Mayor, she had committed Fault # 27 of the Employee Manual and threatened González with discharge, although the Regulations contemplated a suspension from work and pay of 30 days for such an offense.

50. Before González-Nieves, no one at the Municipality had been charged with such an offense.

51. Moreover, the behavior attributed to González-Nieves was not of the type intended to be addressed by Fault #27 of the Employee Manual.

52. The Municipality's investigation for punishing Plaintiff was a sham.

53. The Mayor's threat was meant to intimidate González-Nieves and cause her harm, because she had filed an administrative charge against the Municipality before the

EEOC.

54. In his letter pressing charges, the Mayor even referred to events that had happened almost a year before and for which González-Nieves had never been questioned prior to her filing of the administrative charge on September 6, 2011.

55. It was obvious that Méndez embarked on a "scavenger hunt" in an attempt to justify imposing a harsh disciplinary measure against González-Nieves for daring to file administrative charges seeking to vindicate her rights. Méndez also manipulated the evidence available to support the alleged charges.

56. González-Nieves immediately requested a hearing to challenge and present evidence to rebut the Mayor's allegations in his letter of January 11, 2012.

57. A hearing was held on March 14, 2012 before Hearing Examiner Luis Sánchez Mercado, Esq. At the hearing, Gonzalez-Nieves attorneys stressed to the Hearing Examiner the retaliatory nature of the charges filed by the Mayor and of the existence of an administrative charge filed before the EEOC.

58. This hearing was a sham to give the appearance of fairness and due process when the Municipality's intention was to punish González-Nieves for engaging in protected conduct under federal and local law.

59. As anticipated by González-Nieves, she was disciplined by Méndez.

60. The Municipality imposed and applied a forty-five day suspension, a sanction which is not contemplated by the Regulations in effect at the Municipality, and which was excessive, against González-Nieves for having exercised her protected rights.

61. The fault that was allegedly committed carried a penalty of only a thirty (30) day

suspension.

62. The fifteen day "extension" on the original length of the suspension was due to the Municipality's mistake in failing to specify that during this period González-Nieves would be deprived of her salary.

63. When González-Nieves' attorney informed the Mayor that since the suspension was not without pay, and thus her salary should not be affected, Méndez proceeded to amend the sanction, to forty-five days, thirty (30) of these without pay. The net result of the penalty was that Plaintiff was punished by a longer suspension for having clarified the nature of the original disciplinary measure.

64. As a result of the unwarranted suspension and its "extension", González-Nieves could not accumulate regular or medical leave during her absence.

65. On October 2, 2012, González-Nieves was informed that she would not be paid for five (5) days of work in order to compensate for the receipt of salary during five of the first fifteen (15) days of her forty five day (45) suspension, because she did not have sufficient accumulated leave against which to draw.

66. This situation was solely caused by the Municipality's wrongful imposition of an unlawful and unwarranted forty-five (45) day extension.

67. As part of the retaliatory conduct of the Municipality, Plaintiff was deprived of participating in various seminars, which were required by her.

## IV.   FIRST CAUSE OF ACTION
(Discrimination under the ADA and ADAA)

68. González repeats and incorporates each and every preceding allegation as if fully set forth herein.

69. The Municipality created a hostile work environment predicated on González' disability and has refused to reasonably accommodate González in violation of the ADAA.

70. As a result of the Municipality's discriminatory practices, González has suffered physical and emotional damages, for which it is fully liable.

71. González is entitled to compensation for each and every damage proximately caused by the Municipality's unlawful conduct.

72. González is entitled to injunctive relief for the Municipality to cease and desist of any further discriminatory and retaliatory conduct against González.

## V. SECOND CAUSE OF ACTION
### (Punitive Damages Under ADAA)

73. González repeats and incorporates each and every preceding allegation as if fully set forth herein.

74. The Municipality's discriminatory practices against González were malicious and/or carried with reckless indifference towards González's rights protected under federal and state law.

75. Defendant's discriminatory conduct constitutes a wanton and reckless disregard and deliberate indifference to González' rights and as a result thereof, Aguadilla is liable to González for punitive damages.

## VI. THIRD CAUSE OF ACTION
### REHABILITATION ACT

76. González repeats and incorporates each and every preceding allegation as if fully set forth herein.

77. Gonzalez is an individual with a disability, pursuant to 29 U.S.C. § 705(20)(b)

and 42 U.S.C.A. § 12102(1)(C).

78. Defendants, who receive federal funds, discriminated against Plaintiff by failing to accommodate Plaintiff and/or for failure to engage in a good faith interactive process in order to determine whether it could accommodate plaintiff. This, in violation of the Rehabilitation Act; 42 U.S.C. § 12112(b)(5)(A) (incorporated into the Rehabilitation Act by 29 U.S.C. § 791(g)).

79. As a direct and proximate result of this intentional violation of plaintiff's rights under the Rehabilitation Act by the Defendants, Plaintiff has suffered damages, and loss of enjoyment of life. Plaintiff claims no less than $250,000.00 dollars for the damages suffered on account of defendant's illegal and discriminatory conduct.

### VII.   FOURTH CAUSE OF ACTION
**(Disability Discrimination under Law No. 44)**

80. González repeats and incorporates each and every allegation as if fully set herein.

81. The Municipality's conduct constitutes a violation of Law No. 44.

82. Defendants, Municipality, Méndez, and Guevara, are jointly liable to González for double the compensatory damages proximately caused to González as a result of their discrimination on the basis of disability.

### VIII.   FIFTH CAUSE OF ACTION
**(Retaliation under the ADAA)**

83. González repeats and realleges each and every preceding allegation as if fully set herein.

12

84. González engaged in protected conduct under the ADAA and as a result of the assertion of her rights and opposition to unlawful conduct, she has suffered adverse employment action(s), in the form of hostile work environment unfounded disciplinary measures and refusal to reasonably accommodate González.

85. The Municipality's conduct constitutes retaliation in violation of the ADAA.

86. The Municipality is liable to González for all damages proximately caused by its unlawful retaliation.

87. As a result of the Municipality's retaliatory conduct, González is also entitled to injunctive relief for it to cease and desist of any further discriminatory and retaliatory treatment against González.

## IX.  SIXTH CAUSE OF ACTION
### (Retaliation under Law No. 115)

88. González repeats and realleges each and every preceding allegation as if fully set herein.

89. González engaged in protected conduct under Law No. 115 and as a result of the assertion of her rights, she has suffered adverse employment actions, including having to work in a hostile environment; unfounded disciplinary measures; deprivation of access to opportunities and refusal to reasonably accommodate her.

90. The Municipality's, Méndez', the Acting Mayor's and Guevara's conduct constitutes retaliation in violation of Law No. 115.

91. As a proximate result of defendants' retaliatory conduct González has suffered physical, emotional and compensatory damages.

92. Defendants, Municipality, Méndez, Acting Mayor and Guevara are jointly and severally liable to González for double the compensatory damages proximately caused by defendants' retaliatory conduct.

93. González is also entitled to injunctive relief against defendants ordering them to cease and desist of any further retaliatory conduct against González, including a reasonable award of costs and attorneys' fees.

## X. SEVENTH CAUSE OF ACTION
### (Attorneys Fees and Prejudgment Interest)

94. González repeats and incorporates each and every preceding allegation as if fully set herein.

95. The Municipality is liable to González for attorney's fees under the ADAA, the Rehabilitation Act and under Law No. 44 and 115, and prejudgment interest pursuant to Rule 54 of the Federal Rules of Civil Procedure.

## XI.  TRIAL BY JURY

96. González demands that all causes of action be tried before a jury.

**WHEREFORE**, all premises considered, González prays that judgment be entered in her favor and against defendants, including the following relief:

a.   An order directing defendants to cease and desist of any further discriminatory and/or retaliatory conduct on the basis of disability against her;

b.   Compensatory damages in an amount not less than $250,000.00;

c.   Lost benefits, both past and future;

d.   An award of punitive damages in no less than $299,000.00;

e.   An award of nominal damages in the amount of $1.00;

f.	An award of double compensatory damages pursuant to P.R. Laws Nos. 44 and 115;

g.	An award of reasonable attorney's fees, together with costs, litigation expenses, and necessary disbursements;

h.	Prejudgment interests; and

i.	Any other remedies which this Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 13th day of February 2013.

| | |
|---|---|
| **MANUEL PORRO-VIZCARRA LAW OFFICES** <br> 382 Escorial Ave. <br> Urb. Caparra Heights <br> San Juan, PR 00920 <br> Tel.: (787) 774-8200 <br> Fax: (787) 774-8297 <br> mpv@mpvlawpr.com <br><br> *s/ Manuel Porro Vizcarra* <br> Manuel Porro-Vizcarra <br> USDCPR No. 207006 | **GONZÁLEZ MUÑOZ LAW OFFICES, P.S.C.** <br><br> P.O. Box 9024055 <br> San Juan, PR 00902-4055 <br> Tel.: (787) 766-5052 <br> Fax: (787) 766-5551 <br> polonorteprlaw@gmail.com <br> jrgmlaw@gmail.com <br><br> *s/Juan Rafael González Muñoz* <br> Juan Rafael González Muñoz <br> USDCPR No. 202312 |