UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

LUZ M. GONZALEZ-NIEVES,

    Plaintiff,

    v.

MUNICIPALITY OF AGUADILLA,

    Defendant.

Civil No. 13-1132 (JAF)

## JURY INSTRUCTIONS

MEMBERS OF THE JURY:

It becomes my duty to instruct you on the law of this case.

### General Civil Instructions

**1)**   **Functions:** You are the sole judges of the facts. As such judges, you must accept and apply the law as I state it to you during these instructions.

**2)**   **Consider Instructions Together:** You are not to single out one instruction. On the contrary, you must consider all of them and each of them in the light of the others after carefully evaluating all the facts using your experience as adult citizens and the guidelines set out in these instructions.

**3)**   **Sympathy:** Judges must decide cases without regard to sympathy, prejudice, passion or public opinion. In the business of judging, there is no place for these feelings. All cases and all parties must be measured only under the rule of law, without reference to anything else.

**4)**   **Equal Standing:** All parties stand equal before the law and they deserve the same treatment in a court of justice. Because of this, the Plaintiff deserves equal treatment as

1  the Defendant. The Defendant deserves the same treatment as you would afford the

2  Plaintiff.  Equal standing before the law is guaranteed by our Constitution and, as such,

3  should be respected by you.

4                                            **Witnesses**

5  **5)**     **Judging Witnesses:**  Remember that you have been selected as judges of the facts

6  and, as such judges of the facts, according to the oath you took at the beginning of this

7  trial, you are the sole and exclusive judges of the credibility of the witnesses and the

8  weight that their testimony is to be afforded.  In evaluating this testimony, you may

9  consider the appearance and conduct of the witnesses, the manner in which they testify,

10  the character of the testimony given, and any evidence contrary to the testimony which

11  you have heard throughout this trial.

12          You should carefully scrutinize all the testimony, the circumstances under which

13  each witness has testified, and every matter which tends to show whether a witness is

14  worthy of belief.  You should consider the witness' intelligence and ability to observe

15  matters as to which he or she has testified and you should consider whether the witness

16  had an accurate recollection upon those matters testified about.  It is permissible for you

17  to consider also any relation each witness may have to either side of the case; the manner

18  in which each witness might be affected by the verdict; and the extent to which, if at all,

19  each witness is either supported or contradicted by other evidence.  The witnesses were

20  present or they were not, and they have to take them and bring them to court irrespective

21  of whether they are employees of one of the parties, fellow employees of any party

22  affected or family members, or in any way related by family ties to either party.

1       In summary, you may consider any matter that has a tendency in reason and under

2   your experience to prove or disprove the truthfulness of the testimony of each witness

3   who intends to support a given side of the controversy now before you.

4   **6)**      **<u>Number of Witnesses</u>:**   You are not bound to decide an issue which has been

5   presented to you based upon the testimony of a number of witnesses which do not

6   produce conviction in your mind, as against the testimony of a lesser number of witnesses

7   and other evidence which appeals to your mind with more convincing force.  It would not

8   be logical to decide an issue by simply counting the number of witnesses who have

9   testified on opposing sides.  The test that you are to follow, as judges, is not the number

10  of witnesses, but the convincing force of the evidence as a whole.

11                                                          <u>**Evidence**</u>

12  **7)**      **<u>Consider all Evidence</u>:**   The evidence in any case usually consists of the sworn

13  testimony of all witnesses, whether they testified here in court or by way of deposition

14  which has been read to you, regardless of which side called them; all exhibits received in

15  evidence, regardless of which side offered them, and all facts to which the attorneys have

16  stipulated.  The stipulations are as follows:

17          1. Asthma is a covered disability under the ADA and the Rehabilitation Act;

18          2. Mrs. González presented a reasonable accommodation request to the

19          Municipality on September 7, 2010; and

20          3. Mrs. González filed a claim with the Equal Employment Opportunity

21          Commission on September 6, 2011.

1    You may consider only the evidence produced in court.  Anything you may have

2    seen or heard outside the courtroom is not evidence and must be disregarded.  In this

3    respect, you should also disregard statements, displays of emotion, and other attitudes

4    observed by parties or witnesses within the courtroom in your presence while they were

5    not testifying, for they do not constitute evidence unless I otherwise direct you to so

6    consider them.

7    **8)**   **<u>Statements of Counsel</u>:**  Statements and arguments of counsel are not evidence

8    unless made as an admission or stipulation.  As judges of the facts, you are to carefully

9    analyze the statements and arguments of counsel and their convincing force in the light of

10   the evidence with open-mindedness, serenity, and logic.

11   **9)**   **<u>Objections</u>:**  Throughout trials, sometimes objections are made by either party to

12   evidence that is being presented and the court usually sustains or denies the objection

13   proposed.  When an objection to any question was sustained, you must disregard the

14   question entirely and not speculate as to what the witness would have said if permitted to

15   answer.  The court's ruling on any objection should by no means be taken as indicating

16   any opinion as to the weight or effect thereof.  Please remember that a question is never

17   evidence. The number of questions proposed has nothing to do with the value of the

18   examination to be conducted by the parties and by no means should you consider the

19   length of direct examination or cross-examination as a guideline to the weight to be

20   afforded to the testimony.

21   **10)**   **<u>Questions by the Court</u>:**  During trial, sometimes the presiding judge asks

22   questions in order for him to understand something that was not clear in his mind or to

Civil No. 13-1132 (JAF)                                                                    -5-

1   bring out facts which, in the opinion of the trial judge, were not fully covered in the

2   testimony.  In relation to these questions which the court may or may not propound, you

3   are not to assume that the presiding judge holds any opinion on any matter in this case.

4   The same way you are at liberty to disregard opinions of experts if they do not make

5   sense to you, you are also at liberty to disregard all comments of this judge, except my

6   instructions on the law.

7   **11)**     **<u>Comments to Counsel</u>:**  As you have perceived throughout this trial, trial practice

8   is very demanding of judges and attorneys and, sometimes, there exists, at a given trial,

9   colloquy between the court and counsel.  This colloquy sometimes is easy-going and

10  sometimes I, as judge, have to take a stand to keep proceedings running in an orderly

11  way.

12         It is very important for all of you to understand that any colloquy between the

13  court and counsel is not to be considered by you in determining the issues of the case.

14                            <u>**Types of Evidence**</u>

15  **12)**     **<u>Direct and Circumstantial Evidence</u>:**   There are two types of evidence from

16  which you may find the truth of the facts of a case.  One is direct evidence, such as the

17  testimony of an eye witness, that is, the testimony of a person who saw what actually

18  happened.   The other is circumstantial evidence, which is the proof of a chain of

19  circumstances which together point to the existence of a fact.   The law makes no

20  distinction between direct and circumstantial evidence.  If admitted by this court, one is

21  as valuable as the other.

1   **13)   <u>Inferences</u>:**  You, as judges in the process of considering evidence, are not limited

2   in your consideration to the literal words of the witnesses.  Intelligent and experienced

3   judges are authorized by law to draw such inferences as are justified in the light of that

4   experience which I have mentioned which all of you possess as reasonable and

5   responsible citizens.  Although you know this, I may, at this time, refresh your memory

6   as to what an inference is.  An inference is nothing else but a deduction or a conclusion

7   which reason and common sense lead you to draw from known or proved facts.

8   **14)   <u>Burden of Proof--Preponderance of the Evidence</u>:**  The burden is on the

9   plaintiff in a civil action, such as this, to prove every essential element of her claim by a

10  preponderance of the evidence.  If the proof should fail to establish any essential element

11  of plaintiff's claim by a preponderance of the evidence in the case, the jury should find

12  for the defendant.

13         To "establish by a preponderance of the evidence" means to prove that something

14  is more likely true than not true.  In other words, a preponderance of the evidence in the

15  case means such evidence as, when considered and compared with that opposed to it, has

16  more convincing force, and produces in your minds belief that what is sought to be

17  proved is more likely true than not true.

18         In determining whether any fact in issue has been proved by a preponderance of

19  the evidence in the case, the jury may, unless otherwise instructed, consider the testimony

20  of all witnesses, regardless of who may have called them, and all exhibits received in

21  evidence, regardless of who may have produced them.

1  **15)**     **Weighing the Testimony of an Expert Witness:** You have heard testimony from

2  a person who as a treating physician is also an expert in medical science. An expert

3  witness has special knowledge or experience that allows the witness to give an opinion.

4  You may accept or reject any opinion testimony. In weighing the testimony, you should

5  consider the factors that generally bear upon the credibility of a witness as well as the

6  expert witness's education and experience, the soundness of the reasons given for the

7  opinion and all other evidence in the case. Remember that you alone decide how much of

8  a witness' testimony to believe, and how much weight it should be given.

9       In evaluating expert testimony, you can consider if the facts upon which the

10 experts relied were proven by the proposing party by a preponderance of the evidence.

11 An expert opinion based on facts not proved by a preponderance of the evidence has no

12 value even if you find the expert qualified to testify as such.

13 **16)**     **Reasonable Accommodation Claim:**  In this case, Mrs. González claims that the

14 Municipality discriminated against her because of her disability by failing to provide a

15 reasonable accommodation for her disability within the meaning of the Americans with

16 Disabilities Act (the ADA).

17       The Municipality denies Mrs. González's claim and asserts that the request for the

18 reasonable accommodation and the allegation regarding discrimination under the ADA

19 are a subterfuge to obtain a transfer to another department of the Municipality and to

20 challenge the job functions assigned to her.

1      Under the ADA, if an employer knows that an employee has a disability and needs

2   a reasonable accommodation to perform the essential functions of her job, the employer

3   must provide a reasonable accommodation.

4      **The Interactive Process:** Once a qualified individual with a disability has

5   requested provision of a reasonable accommodation, the employer must make a

6   reasonable effort to determine the appropriate accommodation. The appropriate

7   reasonable accommodation is best determined through a flexible, interactive process that

8   involves both the employer and the employee with a disability. The "interactive process"

9   requires a great deal of communication between the employee and employer.

10      The employer's failure to engage in an informal interactive process would

11   constitute a failure to provide a reasonable accommodation that amounts to a violation of

12   the ADA. However, this interactive process requires the reasonable, good faith,

13   participation by the employee as well as by the employer.  A party, whether the employee

14   or the employer, that obstructs or delays the interactive process is not acting in good

15   faith. A party that fails to communicate, by way of initiation or response, may also be

16   acting in bad faith.

17      In the present case, the Regulations of the Municipality regarding reasonable

18   accommodation establish the term of fifteen (15) days within which it has to consider a

19   request for reasonable accommodation and this consideration is to be conducted through

20   conversations with the employee making the request.  Mrs. González claims that this

21   term of days was not followed.  The Municipality claims that Mrs. González involved

22   attorneys early on in the 15-day period and that its legal counsel decided that the matter

1    could not be handled in such a short time frame due to the adversarial process.  In this

2    respect, you have to decide whether the parties acted in good faith and/or whether the

3    adversarial process that resulted naturally extended the 15-day term and any other term of

4    days in the Regulations.

5           To succeed on her claim, Mrs. González must prove each of the following facts by

6    a preponderance of the evidence:

7           First: Mrs. González had a disability;

8           Second: Mrs. González was a qualified individual;

9           Third: the Municipality knew of Mrs. González's disability;

10          Fourth: Mrs. González requested an accommodation;

11          Fifth:  A  reasonable  accommodation  existed  that  would  have  allowed

12   Mrs. González to perform the essential functions of the job; and

13          Sixth: That the Municipality failed to provide a reasonable accommodation.

14                          **Definition of "Disability"**

15          The first element requires that Mrs. González prove by a preponderance of the

16   evidence that she had a disability. In this case, the Municipality accepts and stipulates the

17   claimed disability.  However, the Municipality claims that the issue was not disability but

18   a transfer and job functions.  In any event, I will define for you the concept of disability.

19          A "disability" is a physical or mental impairment that substantially limits one or

20   more major life activities.

21          A "physical impairment" is a condition that prevents the body from functioning

22   normally.

1    A "mental impairment" is a condition that prevents the mind from functioning

2    normally.

3    A "major life activity" is an activity that is centrally important to everyday life,

4    including the operation of major bodily functions.

5    The breathing function is a major life activity.

6    An impairment "substantially limits" a major life activity if it prevents or

7    significantly restricts a person from performing the activity, compared to an average

8    person in the general population. An impairment that substantially limits one major life

9    activity is a disability even if it does not limit any other major life activity.

10   To decide whether Mrs. González's asthma substantially limits her ability to be an

11   Executive Officer I, you should consider, as compared to most people in the general

12   population:

13       (a)  the condition under which Mrs. González performs the activities of an

14            Executive Officer I;

15       (b)  the manner in which Mrs. González performs the activities of an Executive

16            Officer I; and

17       (c)  how long it takes Mrs. González to perform the activities of an Executive

18            Officer I.

19                                      **Mitigating Measures**

20   To decide whether Mrs. González's asthma substantially limits her ability to be an

21   Executive Officer I, it does not matter that her breathing impairment can be corrected by

22   the use of medication.

1                          **Episodic impairment**

2      If Mrs. González's impairment is not always a problem but flares up from time to

3   time, that can be a disability if it would substantially limit a major life activity when

4   active.

5                  **Definition of "Qualified Individual"**

6      The second element requires that Mrs. González prove by a preponderance of the

7   evidence that she was "qualified" for the job when the Municipality refused to transfer

8   her to another department or facility. This means that Mrs. González must show that she

9   had the skill, experience, education, and other job-related requirements for Executive

10  Officer I, and could do the essential functions of the job—with or without reasonable

11  accommodation.

12     The essential functions of a position are the fundamental duties of that position.

13  The term "essential functions" does not include the position's marginal functions. To

14  decide whether a function is essential to a particular position, you may consider the

15  following factors:

16     (a) whether the function's performance is the reason the position exists;

17     (b) whether there are a limited number of employees available to perform the

18         function;

19     (c) whether the function is highly specialized so that an employee in the position is

20         hired for the ability to perform the function;

21     (d) the Municipality's judgment about which functions are essential to the

22         position;

1      (e) written job descriptions for the position;

2      (f) the amount of time an employee in the position spends performing the

3         function;

4      (g) the consequences of not requiring an employee in the position to perform the

5         function; or

6      (h) whether others who held the position were required to perform the function.

7      No single factor controls your decision. You should consider all the evidence to

8 decide whether a function is essential to the job. To decide whether Mrs. González was

9 qualified to perform the essential job functions, you should consider her abilities as they

10 existed when the Municipality allegedly refused to transfer her to another facility or

11 department.

12      For the third element, Mrs. González must prove by a preponderance of the

13 evidence that the Municipality knew about her disability.  Remember that the

14 Municipality does not challenge the disability.

15      For the fourth element, Mrs. González must prove by a preponderance of the

16 evidence that she requested an accommodation.

17      For the fifth element, Mrs. González must prove by a preponderance of the

18 evidence that a reasonable accommodation existed that would have allowed her to

19 perform the essential functions of the job.

20      For the sixth element, Mrs. González must prove by a preponderance of the

21 evidence that the Municipality failed to provide a reasonable accommodation.

1      In this case, Mrs. González claims that she would have been able to perform the

2  essential functions of Executive Officer I with a reasonable accommodation.

3      The Municipality claims that Mrs. González was unwilling to perform the

4  essential job functions—even with a reasonable accommodation; the Municipality claims

5  that as the process developed and in 2014, it offered Mrs. González two reasonable

6  accommodations, and she refused them.   The Municipality also claims, as stated before,

7  that her reasonable accommodation request was a subterfuge to obtain a transfer and/or to

8  challenge her job functions.

9      A "reasonable accommodation" is a modification or adjustment of the employer's

10  ordinary work rules, facilities, or terms and conditions of employment that the employer

11  can make without causing an undue hardship. A reasonable accommodation may include:

12      (a) making existing facilities readily accessible to, and usable for, Mrs. González;

13      (b) job restructuring;

14      (c) part-time or modified work schedules;

15      (d) reassignment to a vacant position;

16      (e) acquiring or modifying equipment or devices;

17      (f) adjusting or modifying examinations, training materials, or policies;

18      (g) providing qualified readers or interpreters; or

19      (h) other similar accommodations for individuals with disabilities.

20      In  this  case,  Mrs.  González  claims  that  the  Municipality  should  have

21  accommodated her by reassigning her to another position.   Reassignment may be a

22  reasonable accommodation—but an employer is not required to create or reestablish a job

1    where one would not otherwise exist. Also, an employer is not required to promote an

2    employee with a disability or allow the employee to decide what the job description

3    should be as an accommodation. To show that reassignment to another job would have

4    been a reasonable accommodation, Mrs. González must prove that the job was vacant or

5    available and that she was qualified for it.  However, the employer has a continuing duty

6    to identify vacant positions once the employee requests reassignment.

7         To decide whether the Municipality denied Mrs. González a reasonable

8    accommodation, you should keep in mind that while an employer is required to provide a

9    reasonable accommodation that would allow Mrs. González to perform the essential job

10   functions, the employer is not required to provide the particular accommodation that Mrs.

11   González prefers or requests. There may be more than one reasonable accommodation

12   available under the circumstances, and if Mrs. González refused to accept an

13   accommodation offered by the Municipality that would have allowed her to perform the

14   essential job functions, Mrs. González has not proved that the Municipality failed to

15   provide a reasonable accommodation.

16                                    **Good-Faith Defense**

17        If you find that Mrs. González has proved each element she must prove, you must

18   decide whether the Municipality has established its affirmative defense.  The

19   Municipality claims that after Mrs. González informed the Municipality of her disability

20   and requested an accommodation, the Municipality made good-faith efforts to consult

21   with her in order to identify and make a reasonable accommodation that would not cause

22   an undue hardship on the operation of the Municipality's business.

1    The Municipality must prove by a preponderance of the evidence that it made

2    good-faith efforts to identify and make a reasonable accommodation for Mrs. González.

3    If you find by a preponderance of the evidence that the Municipality made good faith

4    efforts to identify and make a reasonable accommodation for Mrs. González, then you

5    have found that the Municipality established its affirmative defense, and you will not

6    decide the issue of Mrs. González's damages. But, if you find that the Municipality has

7    not established its affirmative defense, you must decide the damages issue.

8        **17)    Retaliation Claim:** Because Disability is not an element of a retaliation

9    action under the ADA, you are instructed that you must consider Plaintiff's claim of

10   retaliation separate from any other claim.   In other words, a retaliation claim is

11   independent from or is not tied to a finding of discrimination; you can find there was no

12   discrimination and still find that there was retaliation; you can find there was

13   discrimination and retaliation and you can also find that there was none.

14       In this case, Mrs. González claims that the Municipality retaliated against her

15   because she took steps to enforce her lawful rights under the Americans with Disabilities

16   Act by filing a reasonable accommodation request.

17       Laws that prohibit discrimination in the workplace also prohibit an employer from

18   taking any retaliatory action against an employee because the employee has asserted

19   rights or made complaints under those laws.

20       An employee may make a discrimination complaint as a means to enforce what

21   she believed in good faith to be her lawful rights. So, even if a complaint of

22   discrimination against an employer is later found to be invalid or without merit, the

1   employee cannot be penalized in retaliation for having made such a complaint if you find

2   that the employee made the complaint as a means of seeking to enforce what the

3   employee believed in good faith to be her lawful rights. To establish "good faith,"

4   however, it is insufficient for Mrs. González merely to allege that her belief in this regard

5   was honest and bona fide; the allegations and the record must also establish that the

6   belief, though perhaps mistaken, was objectively reasonable.

7          Mrs. González claims that the Municipality took adverse employment action

8   because she filed a reasonable accommodation request.   The Municipality denies

9   Mrs. González's claim and asserts that the request for a reasonable accommodation and

10  her allegation of discrimination under the Americans with Disabilities Act are a

11  subterfuge to obtain a transfer to another facility or department of the Municipality.

12         To succeed on her claim, Mrs. González must prove each of the following facts by

13  a preponderance of the evidence:

14         First: Mrs. González engaged in a protected activity;
15
16         Second: the Municipality then took an adverse employment action, and what the
17                 adverse employment action was;
18
19         Third:  the Municipality took the adverse employment action because of
20                 Mrs. González's protected activity; and
21
22         Fourth:  Mrs. González suffered damages because of the adverse employment
23                 action.
24
25         For the first element, Mrs. González claims that she engaged in protected activities

26  when she filed the request for a reasonable accommodation and when she filed a claim

27  with the Equal Employment Opportunity Commission (EEOC). An action is "protected

1   activity" if it was based on Mrs. González's good-faith, reasonable belief that the

2   Municipality discriminated against her because of having filed a request for a reasonable

3   accommodation and because of her charge before the EEOC.  Mrs. González had a "good

4   faith" belief if she honestly believed that the Municipality discriminated against her

5   because of having filed a request for a reasonable accommodation. Mrs. González had a

6   "reasonable" belief if a reasonable person would, under the circumstances, believe that

7   the Municipality discriminated against her because of the filing of the request.  Mrs.

8   González does not have to prove that the Municipality actually discriminated against her

9   because of protected activity.  But, she must prove that she had a good-faith, reasonable

10  belief that the Municipality did so.

11       For the second element, Mrs. González claims that the Municipality took an

12  adverse employment action against her when it suspended her from work for thirty days,

13  or 45 days 15 with pay, and/or gave her a job description inconsistent with her position.

14  You must decide whether the thirty-day suspension, or 45 days, 15 with pay, and/or the

15  job description changes are adverse employment actions under the circumstances of the

16  case and in light of all evidence on the record.

17       An "adverse employment action" is any type of action that would have made a

18  reasonable employee reluctant to make or support a charge of discrimination. Put another

19  way, if a reasonable employee would be less likely to complain about or oppose alleged

20  discrimination because she knew that the Municipality would retaliate, then that action is

21  an adverse employment action. If the employment action would not make it less likely for

1    a reasonable employee to make complaints about or oppose the alleged discrimination, it

2    is not an adverse employment action.

3         For the third element, if you find that Mrs. González engaged in protected activity

4    and that the Municipality took an adverse employment action against her, you must

5    decide whether the Municipality took that action because of Mrs. González's protected

6    activity. Put another way, you must decide whether Mrs. González's protected activity

7    was the main reason for the Municipality's decision.

8         To determine that the Municipality took an adverse employment action because of

9    Mrs. González's protected activity, you must decide that the Municipality would not have

10   taken the action had Mrs. González not engaged in the protected activity but everything

11   else had been the same.  The Municipality claims that it did not suspend Mrs. González

12   for thirty days because she requested an accommodation and that it took the action for

13   other reasons that were fully litigated administratively and over which there is evidence

14   on the record. The Municipality also claims that there is no adverse employment action in

15   the assignments of the job descriptions to her.  An employer may not take an adverse

16   action against an employee because of the employee's protected activity. But, an

17   employer may suspend an employee for any other reason, good or bad, fair or unfair. If

18   you believe the Municipality's reasons for its decision, and you find that the Municipality

19   did not make its decision because of Mrs. González's protected activity, you must not

20   second-guess that decision, and you must not substitute your own judgment for the

21   Municipality's judgment—even if you do not agree with it.

1    For the fourth element, you must decide whether the Municipality's acts were the

2    proximate cause of damages that Mrs. González sustained. Put another way, you must

3    decide, if the Municipality had not suspended Mrs. González, would these damages have

4    occurred?  If you find that the Municipality's acts were the proximate cause of damages

5    that Mrs. González sustained, you must determine the amount of damages.

6    In other words, there has to be a proven relationship between the alleged

7    retaliation and specific damages as a result of the alleged and proven retaliation. A

8    Special Verdict form will assist you in making your findings.

9    **18)** **Damages:** My instructions on this issue of damages should not be taken as an

10   indication as to how the court feels one way or another. I have the duty to instruct you on

11   the proper measure of damages as it is my duty to instruct you on the issue of liability.

12   Of course, damages cannot be calculated or imposed in the absence of liability.

13   Plaintiff has the burden of proving, by a preponderance of the evidence, (i) that

14   she has suffered damages as a proximate result of Defendant's conduct, and (ii) the

15   amount of damages, if any. Damages need not be proven with absolute certainty.

16   In considering the issue of compensatory damages, you may only assess the

17   amount you find to be justified by a preponderance of the evidence as full, just, and

18   reasonable compensation for the plaintiff's damages that were proved by a preponderance

19   of the evidence, no more and no less. Compensatory damages cannot be based on

20   speculation or guesswork.

21   You may consider that damages may include broad categories of recovery that

22   may include, among others, physical damage and/or damages due to her deterioration of

1    health and emotional pain and suffering as a result of an inflicted disability and the

2    reasonable value of economic damages if they were proved by competent evidence and

3    by a preponderance of the evidence.

4          As to physical damages and/or emotional pain and suffering, Plaintiff has the

5    burden of proof and must present the necessary evidence so that such physical damage

6    and/or deterioration of her health and/or pain and suffering, if any, be justly and

7    adequately evaluated by you. To recover damages for emotional pain and suffering, the

8    Plaintiff must prove more than a passing sorrow. She must prove that in a profound or

9    appreciable manner, she was deeply and substantially affected in her health, welfare, and

10   happiness, and that these effects were caused by the claimed acts of the Defendant, if any.

11         When considering the issue of Mrs. González's compensatory damages, you

12   should determine what amount, if any, has been proven by Mrs. González by a

13   preponderance of the evidence as full, just, and reasonable compensation for all of

14   Mrs. González's damages as a result of the Municipality's failure to provide

15   Mrs. González with a reasonable accommodation, and/or for its retaliation against Mrs

16   González, no more and no less. Compensatory damages are not allowed as a punishment

17   and must not be imposed or increased to penalize the Municipality.  Also, compensatory

18   damages must not be based on speculation or guesswork.

19         You should consider the following elements of damage, to the extent you find that

20   Mrs. González has proved them by a preponderance of the evidence, and no others:

21         (a) physical damage and/or deterioration of her health condition; and

22         (b) emotional pain and mental anguish.

1      To determine whether and how much Mrs. González should recover for her

2  physical damage and/or deterioration of her health condition and/or for emotional pain

3  and mental anguish, you may consider both the mental and physical aspects of injury—

4  tangible and intangible. Mrs. González does not have to introduce evidence of a monetary

5  value for intangible things like mental anguish. You must determine what amount will

6  fairly compensate her for those claims. There is no exact standard to apply, but the award

7  should be fair in light of the evidence.

8                              **Mitigation of Damages**

9      You are instructed that any person who claims damages as a result of an alleged

10  wrongful act on the part of another has a duty under the law to "mitigate" those damages.

11  For purposes of this case, the duty to mitigate damages requires Mrs. González to be

12  reasonably diligent in seeking substantially equivalent employment to the position she

13  held with the Municipality. To prove that Mrs. González failed to mitigate damages, the

14  Municipality must prove by a preponderance of the evidence that: (1) work comparable

15  to the position Mrs. González held with the Municipality was available, and

16  (2) Mrs. González did not make reasonably diligent efforts to obtain it. If, however, the

17  Municipality shows that Mrs. González did not make reasonable efforts to obtain any

18  work, then the Municipality does not have to prove that comparable work was available.

19      If you find that the Municipality proved by a preponderance of the evidence that

20  Mrs. González failed to mitigate damages, then you should reduce the amount of

21  Mrs. González's damages by the amount that could have been reasonably realized if

1    Mrs. González had taken advantage of an opportunity for substantially equivalent

2    employment.

3                                     **Conduct of Jury**

4    **19)**      **Individual Opinion:** The verdict must represent the considered judgment of each

5    juror and each juror must agree to it.  In other words, it must be unanimous.  It is your

6    duty as jurors to consult with one another and to deliberate in good faith with a view to

7    attempting to reach an agreement, if you can do so without violence to your individual

8    judgment.  This means that each of you must decide the case for yourself, but you should

9    do so only after an impartial consideration of the evidence with your fellow jurors.  In the

10   course of your deliberations, do not hesitate to reexamine your own views and change

11   your mind if convinced that it was in error.  However, do not surrender your honest

12   conviction as to the weight or effect of the evidence solely because of the opinion of your

13   fellow jurors or for the mere purpose of returning a verdict.  Remember at all times that

14   you are not partisans in this case, you are judges.  Your sole purpose is to find the truth

15   from the evidence in the case.

16   **20)**      **Foreman; Returning Verdict:** When you retire to the jury room, you shall select

17   one of your members to act as your foreperson.  The foreperson will preside over your

18   deliberations and be your spokesman.  Forms of verdict have been prepared for your use.

19   As soon as you have agreed upon a verdict, your foreperson shall fill out the form, date,

20   and sign it, and you will all return to this courtroom.

21   **21)**      **Communications Between Court and Jury During Jury's Deliberations:** If it

22   becomes necessary during your deliberations to communicate with the court, you may

1    send a note through a bailiff, signed by your foreperson or any member of the jury.  You

2    should never attempt to communicate with the court by any means other than a signed

3    writing; and the court will never communicate with you on any subject touching the

4    merits of the case, otherwise than in writing, or in open court.

5          You will note from the oath about to be taken by the bailiffs that they too, as well

6    as all other persons, are forbidden from communicating with any member of the jury on

7    any subject touching the merits of the case.

8          You are never to reveal -- not even to the court -- how the jury stands, numerically

9    or otherwise, until after you have reached your unanimous verdict.

10         San Juan, Puerto Rico, this 20th day of March, 2015.

11                                               S/José Antonio Fusté
12                                               JOSE ANTONIO FUSTE
13                                               U. S. DISTRICT JUDGE